### 1731.  MOONE v. SMITH et al.

1. A customer of a "soft drink," billiard, and pool room, or other like place, is there by the invitation of the proprietor, and, while therein lawfully engaged, it is the duty of the proprietor to protect him from injury caused by the misconduct, not only of his own employees, but of other customers and third persons.  If, therefore, there is any reasonable apprehension of danger to such a customer from the unlawful·conduct of other customers or third persons, or if a personal injury from the misconduct of other customers or third persons can be prevented by the proprietor by the exercise of ordinary care and diligence, he may be guilty of negligence for his failure to use it, and consequently responsible in damages.

2. The duty assumed by the owner of a place of amusement or recreation where the public are invited, for his profit and their pleasure, is analogous to that which the law imposes upon carriers of passengers, differing only in the standard of care required.  In the latter, the standard is extraordinary care; and in the former, ordinary care.

3. The allegations of the petition, if proved, were sufficient to send the case to the jury.

Action for damages, from city court of Atlanta—Judge Reid. January 4, 1909.

Argued April 14,—Decided October 5, 1909.

A. H. Davis, for plaintiff.   J. L. Key, for defendant.

HILL, C. J.   Moone sued Smith and Morrow for damages on account of personal injuries.   The trial court sustained a demurrer to the petition and dismissed it, and this is the error assigned. The petition in substance sets forth the following facts:  The defendants were partners and joint owners in the business of running a pool and billiard room, and sold therein cigars, tobacco, and "soft drinks."   Their place of business is a public place and resort for recreation and amusement, and they solicit and invite the patronage of the public.   The plaintiff went into this place for the purpose of amusement, and, while engaged in playing a game of pool, and conducting himself in a proper and orderly manner, a quarrel arose in the room between four or five men who were intoxicated.   The quarrel among these men began in the rear of the room, some distance from where he was playing.   They became disorderly and began cursing.   Four of them, who were drunk, threatened to do violence to the person of one who was not drunk, and ·forced this one to retreat from one part of the room to another. This disorderly conduct continued for some ten or fifteen minutes, during which time there was a continuous brawl between the

parties, and a consequent noise and disturbance was noticeable in all parts of the room.    One of the defendants was present in the room during the entire continuance of this disorderly conduct and witnessed it, and the employees of the place, who were waiting on customers in various parts of the room, were also witnesses of the disorder.    Notwithstanding a breach of the peace was imminent and actually committed, neither the proprietors nor any of their agents made any effort to quell the disorder by personal interference or by calling on the police.    While this disorderly conduct was in progress, plaintiff being in no way involved in it, continuing his game, relying upon the protection due him and the other peaceable and orderly customers from the proprietors, the difficulty reached its climax and the fighters suddenly precipitated themselves to the place where the plaintiff was standing, ran against him with such suddenness and violence that he was unable either to withdraw or to defend himself, and in the mêlée one of the drunken men engaged in the fight struck him a terrible blow in the eye, putting the eye entirely out and involving his other eye, threatening complete blindness.    He charges that the proprietors and their agents had ample notice and opportunity to interfere and prevent the continuance and culmination of the brawl and fight, but wholly neglected and failed to do so and to perform their duty for the protection of the plaintiff and other peaceable and orderly customers.

The essential foundation for all actionable negligence is the existence of a duty which the defendants owed to the plaintiff in connection with the particular subject-matter, and the breach of that duty by the defendants.    The duty is defined by the law; the breach of that duty is determined by the particular facts.    Where the duty and the breach concur, a legal injury arises, and, if damage results, an action will lie.    Of course, where the allegations of the petition, when most favorably considered for the plaintiff, show neither duty nor breach, or duty without breach, or show that the plaintiff's injury was caused by his own negligence, or that he could by the exercise of ordinary care have avoided the consequences of the defendant's negligence, the trial court, on demurrer, should put an end to the case.    Upon a critical examination of the allegations of the petition, our conviction is that they suffice to show that the defendants owed a duty to the plaintiff while he

was in their place of business. This duty was to use ordinary care and diligence to protect the plaintiff, while he was in the defendants' place of business lawfully engaged, from injury,—injury either from the unsafe condition of the premises themselves, from their own conduct, or from that of their employees, or injury from any vicious or improper persons who were in the room either as customers or otherwise. The defendants had invited the plaintiff into their place of business, for his amusement and their benefit. The plaintiff had accepted the invitation of the defendants, and confided in their implied promise that he would be protected while in this place of amusement controlled by them, in so far as they could protect him by the exercise of reasonable care and diligence. When a man keeps a place of amusement and invites the public to come therein for the purposes of his business, he must be taken to promise protection against such injuries or risks as the character of the business he is conducting would naturally suggest to him might be expected where due care is not taken to guard against their occurrence, and to insure to the person entering a safe egress. We think the case even stronger than that of one who invites a person to come on his premises to transact business with him, and who, while on such premises, is bitten by a vicious animal of the owner of the premises, or is injured by some unsafe condition of the premises themselves, or by the negligent conduct in some way of the owner of the premises or his servants. Here the plaintiff is invited into a saloon by the defendants. He is tempted to enter by the allurements of pleasure held out to him by the defendants. He enters, not only for the purpose of his own amusement, but to contribute to the profits of the defendants and to the success of their business. Surely he has a right to assume that the place is reasonably safe and that the proprietors will exercise reasonable care and diligence to protect him while he is peaceably and lawfully engaged therein. The same principle applies as in the case of carriers and passengers, the rule of diligence only differing. In the latter case the rule of diligence is greater, being that of extraordinary care to protect the passengers not only from the insults and injuries of the employees of the company, but also from the insults and injuries of fellow passengers. *Hillman* v. *Georgia R. Co.*, 126 *Ga.* 814 (56 S. E. 68) ; *Richmond & Danville R. Co.* v. *Jefferson*, 89 *Ga.* 554 (16 S.

E. 69, 17 L. R. A. 571, 32 Am. St. R. 87) ; 1 Thomp. Neg. §996. The case sub judice, therefore, while it may be novel in the application of the principle, is, both upon the analogies of the law and the dictates of common sense, amply supported by the principle; and we hold that the presence of drunken men actually engaged in a fight on the premises involved a danger to the peaceable and orderly customers of the proprietors, against which it was the duty of the defendants, by the exercise of ordinary care, to protect the plaintiff. We think that one who maintains places of amusement and recreation for the public is charged by law with the duty of preserving order therein and of protecting those who enter such places upon his invitation and for his benefit. We fully concur in the opinion of the court in the case of Rommel *v.* Schambacher, 120 Pa. 579 (11 Atl. 779, 6 Am. St. R. 732), that the "proprietor of a saloon or tavern open for entertainment of the public is bound to exercise ordinary care and diligence to see that one who enters is protected, not only from the assaults and violence of those in his employ, but of drunken and vicious men whom he may choose to harbor." See also Blakeley *v.* White Star Line, 154 Mich. 635 (118 N. W. 482, 19 L. R. A. (N. S.) 772, and case note) ; Higgins *v.* Franklin Soc., 100 Me. 565 (62 Atl. 708, 3 L. R. A. (N. S.) 1132, and case note). We think the duty imposed on the defendants in this case is defined by section 3824 of the Civil Code: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe."

Was there a breach by the defendants of the duty which the law imposed upon them? This is usually a question to be referred to the jury, and should always be so referred, unless the allegations show beyond controversy that there was no such breach of duty as would render the defendant liable for damages. We are not willing to hold that under the allegations of this petition, as matter of law, the defendants were not guilty of culpable negligence. We are not willing to hold that the proprietor of a "near-beer," billiard, or pool saloon, who permits four or five drunken men to fight in his presence, and who neither by himself nor his employees makes any effort to stop the disorder, who does not call in the

assistance of the police, and makes no effort whatever to protect his peaceable and orderly guests from the risks of danger ordinarily attending a fight between intoxicated persons, can not be held liable in damages for his inactive and negligent conduct. It is a question of fact for the jury, and not of law for the court. There is no allegation in the petition that the intoxication of the men was caused by anything that they drank upon the premises; if so, the liability of the defendants would be stronger and clearer; and presumably they did not drink any intoxicants there. But whether they got drunk on the premises or came on the premises in a drunken condition, according to the allegations they were allowed to come into the room in this drunken condition, and to remain therein and to engage in a fight, to the hazard and danger of peaceable and orderly guests, and to actually injure one such guest; and a finding of the jury that these facts constituted culpable negligence, or the failure to exercise ordinary care and diligence on the part of the owner, might well be supported.

It is also insisted, that the allegations of the plaintiff show that the plaintiff himself might have avoided any injury, by the exercise of ordinary care and diligence; that, hearing and seeing that the men were drunk and fighting, it was his duty, if he reasonably apprehended danger therefrom, to leave the saloon. We are not prepared to hold that a person who is lawfully in a place of amusement or public entertainment is required to leave because of the unlawful, vicious, or dangerous conduct of other persons therein. He might be authorized to remain, relying upon the proprietor and his servants to quell the disturbance and to protect him from any hurtful consequences. The question of contributory negligence is peculiarly one for the jury; and, under the allegations of this petition that the difficulty began in a different part of the room from where the plaintiff was engaged in playing, and that suddenly the fighters precipitated themselves to the place where the plaintiff was standing, and ran against him with such suddenness and violence that he was unable either to withdraw or to defend himself, it can not be conclusively held that he could have avoided injury by the exercise of ordinary care and diligence. For the reasons stated, we think the learned trial court erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed.*